UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDY KIRKLAND, *on behalf of herself and all other similarly situated* <br><br> Plaintiff, <br><br> v. <br><br> EF INSTITUTE FOR CULTURAL EXCHANGE, INC., EF WORLD JOURNEYS, INC. f/k/a Go Ahead Travel, Inc., and ACADEMIC HEALTHPLANS, INC. f/k/a Specialty Insurance Solutions, <br><br> Defendants. | Case No.: <br><br> CLASS-ACTION <br><br> COMPLAINT AND DEMAND FOR JURY TRIAL |

## **CLASS-ACTION COMPLAINT**

Brandy Kirkland ("Plaintiff" or "Kirkland"), individually, and on behalf of all others similarly situated, and demanding a trial by jury, brings this action against EF Institute for Cultural Exchange, Inc. ("EFI") and EF World Journeys, Inc. ("EFW") (collectively "EF Defendants") and Academic HealthPlans, Inc. f/k/a Specialty Insurance Solutions ("Specialty") (collectively "Defendants"). Kirkland sues Defendants for violation of the Pennsylvania Unfair Trade Practice and Consumer Protection Law, 73 Pa. C.S. § 201, *et seq.* ("UTPCPL"), breach of contract and/or unjust enrichment (in the alternative to breach of contract), and further asserts a claim against Specialty for Insurance Bad Faith, 42 Pa. C.S. § 8371, *et seq.* In connection therewith, Kirkland states as follows:

## THE PARTIES

1. Plaintiff and putative class-representative, Brandy Kirkland, is a natural person and adult, who at all times relevant hereto, resided in Darby, Pennsylvania.

2. Defendant EF Institute for Cultural Exchange is an international tourism company headquartered at Two Education Circle, Cambridge, Massachusetts 02141.

3. Defendant EF World Journeys, Inc. is an international tourism company headquartered at Two Education Circle, Cambridge, Massachusetts 02141.

4. The EF Defendants worked as a joint, common enterprise with common owners, managers, employees and business operations, at all times relevant to this action.

5. Defendant Academic HealthPlans Inc. is an insurance company formerly known as Specialty Insurance Solutions. Academic has a primary office located at 160 Federal Street, 4th Floor, Boston, Massachusetts 02110.

6. Defendants acted through their officers, directors, managers, employees, agents, vendors and contractors.

## JURISDICTION AND VENUE

7. Because there exists complete diversity between the Parties and the amount in controversy exceeds $75,000.00, federal jurisdiction exists pursuant to 28 U.S. Code § 1332.

8. Furthermore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Class are in excess of $5,000,000.00, exclusive of interests and costs.

9. This Court has personal jurisdiction over Defendants, as the Defendants availed themselves to the forum state by contracting with and seeking the business of consumers who resided in the Commonwealth of Pennsylvania.

10. Furthermore, Defendants each regularly do business in the Commonwealth of Pennsylvania.

11. Defendants also have registered to do business in the Commonwealth of Pennsylvania, subjecting themselves to jurisdiction of courts within this Commonwealth. *Mallory v. Norfolk S. Ry*, No. 21-1168, 2023 2023 U.S. LEXIS 2786 | __ S.Ct. __ | 2023 WL 4187749 (US June 27, 2023).

12. Plaintiff experienced the harms associated with Defendants' deceptive and unfair business practices within this District, where she resided at all times relevant to this Action and continues to reside at the time of this filing.

13. Accordingly, this Court has subject matter over the dispute and personal jurisdiction over the Defendants. Furthermore, venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## FACTUAL BACKGROUND

14. Sometime in or around July 2019, Brandy Kirkland and her son Isaiah contracted with the EF Defendants for an educational tour administrated by the EF Defendants.

15. Brandy Kirkland paid a total of approximately $5,640, including $3,120 for herself and $2,520 for, Isaiah to go on an educational trip and tour in Costa Rica, which was scheduled for April of 2020.

16. The scheduled educational tour was coordinated through Isaiah's school.

17. Kirkland paid for that trip through monthly installment payments made from her Bank of America debit account.

18. When purchasing the tickets for the educational tour, Kirkland relied upon the guarantees from the EF Defendants, that she would receive a full refund in the event the trip became impracticable.

19. As an additional prophylactic measure, Kirkland purchased travel insurance through Specialty, which assured a refund in the event of a cancellation due to *inter alia,* quarantine.

20. Covid-19 rendered the scheduled trip impracticable and it was cancelled by EF Tours.

21. At the time of the scheduled educational tour, a shelter-in-place quarantine order from Governor Wolf was in effect.

22. Despite the fact the tour to Costa Rica did not occur, EF Defendants refused to return Kirkland and the putative class the monies paid, and offered only vouchers for future educational tours.

23. However, Kirkland and her son were planning a one-time trip that was in connection with her son's school, which Isaiah no longer attends.

24. Accordingly, a voucher for prospective future tours through the EF Defendants, had no value, and continues to have no value to Kirkland.

25. Kirkland lodged numerous futile disputes with EF Tours, which refused without justification to refund her monies paid, for services not rendered.

26. Making matters worse, EF Defendants told Kirkland that the travel insurer Specialty, was not refunding money paid for the tours, despite the policy assuring refunds in the event of quarantine.

27. Undeterred, Kirkland lodged disputes with Bank of America, which was able to procure reversal of certain installment payments by Kirkland. However, those reversals only refunded Kirkland a relatively small portion of what she paid.

28. After having their hands forced by the Massachusetts Attorney General, EF Defendants paid consumers *partial* refunds, where EF Defendants still kept approximately $565 per person.

29. However, that refund is still incomplete and EF Defendants are still unjustly enriched at the consumers' expense. The subject trip did not occurs and a voucher has no value to Kirkland.

30. EF Defendants justify their retention of funds paid by consumers for trips that did not occur by the purported fact EF Defendants paid monies to their vendors prior to the Covid-related cancellations. If true, however, that would be a basis for EF Defendants to seek indemnification and/or file a third-party claim against vendors, not a reason to retain consumer payments.

31. Furthermore, EF Defendants received funding from various federal and state programs, including the Paycheck Protection Program, to make up for lost revenue from Covid-19 cancellations.

32. Consumers - many of whom also suffered financial hardship during Covid-19 - were not and are not EF Defendants' social safety net or insurers.

33. As then Attorney General (now Governor) Josh Shapiro explained it simply in May of 2020:

> If the policy says a consumer gets a full refund if an event is cancelled, that consumer better get a full refund… These businesses cannot sail away with consumers' money when the trip isn't happening or a concert is cancelled with no reschedule date.

Office of the Attorney General for the Commonwealth of Pennsylvania, *AG Shapiro: Travel, Event Refund policies must be Honored During Covid-19 Emergency* (May 5, 2020), available

at: https://www.attorneygeneral.gov/taking-action/ag-shapiro-travel-event-refund-policies-must-be-honored-during-covid-19-emergency/.

34. Kirkland and the putative class relied upon representations and warranties made by EF Defendants. The failure to offer a full refund was an unfair business practice. Plaintiff relied upon Defendants' representations which were false.

35. Further, EF Defendants breached their contract with Kirkland and each member of the putative class by failing to provide full refunds when the trips were cancelled.

36. In the alternative, the circumstances when the contract was entered into changed, and performance of the contract became impossible due to Covid-19. Therefore, the contract for the trip was dissolved by impossibility. By keeping the remaining $565 per person and not issuing a refund, EF Tours was unjustly enriched.

37. Furthermore, Specialty's refusal to cover losses incurred due to quarantine was in violation of its policy and constitutes insurance bad faith.

## Class Allegations

38. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. commonality, typicality, and adequacy of representation.

39. Plaintiff seeks to represent the following class:

> **EF Pennsylvania Class**: Citizens of the Commonwealth of Pennsylvania, who purchased tickets for travel through EF Defendants, for educational tours scheduled to occur any time between March and September of 2020, cancelled in light of the Covid-19 Pandemic, who were denied or otherwise not offered a full refund, including those offered a voucher for future travel, which was not utilized; and

> **Specialty Pennsylvania Class**: Citizens of the Commonwealth of Pennsylvania, who purchased travel insurance from Specialty Insurance Solutions, for trips administered by EF Defendants, that were cancelled due to Covid-19 related quarantine, and were nonetheless not offered a full refund.

40. Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

41. The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people have been harmed by Defendants' actions. The names and addresses of the proposed class members are readily identifiable through records available to Defendants.

42. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

43. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to, whether Defendants engaged in conduct likely to cause confusion or to mislead, whether the terms of written warranties or guarantees were breached, whether the contract for purchase of travel through EF Defendants were breached, whether EF Defendants were unjustly enriched and whether Specialty engaged in insurance bad faith.

44. Plaintiff's claims are typical of the claims of the proposed class members because their claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

45. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action litigation and consumer law. Plaintiff's counsel has the resources to litigate this class action, and Plaintiff and counsel are aware of their responsibilities to the putative members of the class and will discharge those duties. Plaintiff reserves the right to join other unnamed class members into this lawsuit.

46. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

47. In contrast to numerous individual claims, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

48. Questions of law and fact predominate over questions affecting only individual members.

49. Defendants have acted or refused to act in accordance with the relief sought by these classes, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## COUNT I
## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
## AND CONSUMER PROTECTION LAW
### *(Plaintiff v EF Defendants)*

50. Plaintiff hereby incorporates all facts and allegations specified in all preceding paragraphs, by reference as if fully set forth at length.

51. Plaintiff is a "person" as defined by 73 P.S. §201-2(2).

52. Each defendant is a "person" as defined by 73 P.S. §201-2(2).

53. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-2(4), defines "unfair or deceptive acts or practices" to include the following conduct:

> (xiv) failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made; and

> (xxi). Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

54. EF Defendants actions of refusing to refund consumers the full amount paid when those consumers did not obtain any benefit of the bargain, was unconscionable.

55. EF Defendants failed to comply with the written terms of their warranties and guarantees.

56. EF Defendants assured full refunds would be offered in the event of cancellation and further assured that they would administer educational tours to locations including Costa Rica.

57. Plaintiff and putative class members relied on those representations.

58. EF Defendants' actions constitute otherwise reckless, wanton, or willful conduct which is prohibited by the UTPCPL.

59.   The UTPCPL also authorizes the Court, in its discretion, to award up to three (3) times the actual damages sustained for violations plus attorney's fees and costs.

60.   Plaintiff and the putative class have suffered actual damages and an ascertainable loss as a result of EF Defendants' violations.

61.   As a result, EF Defendants are liable to Plaintiff and the putative class for the full amount of statutory, actual and treble damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT II
## BREACH OF CONTRACT
### (*Plaintiff v EF Defendants*)

62.   Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as though the same were fully set forth herein.

63.   EF Defendants and Plaintiff, entered into valid contracts for Defendant to administer educational tours to Costa Rica, and Plaintiff would pay money as outlined in the contract.

64.   Defendant's contract as outlined above, included a cancellation policy where full refunds would be offered in the event of cancellation.

65.   EF Defendants were unable to perform their contractual obligations.

66.   Only after their hands were forced by civil authorities including the Massachusetts Attorney General, did EF Defendants offer partial refunds.

67.   Nonetheless, EF Defendants retained money paid despite their failure to perform their obligations under the contract.

68. Plaintiff and the putative class received no benefit of the bargain, despite making all payments due under the contract in full compliance with their obligations.

69. As a result of the breach of contract, Plaintiff and the putative class are entitled to fair compensation in the form of a refund of all amounts paid to EF Defendants, plus interest.

**COUNT III**
**UNJUST ENRICHMENT**
**In the alternative to breach of contract**
(*Plaintiff v. EF Defendants*)

70. Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as though the same were fully set forth herein.

71. Because performance under the contract was impossible, the contract was dissolved.

72. Nonetheless, EF Defendants retained money paid by Plaintiff and the putative class for services not rendered.

73. Where EF Defendants received taxpayer funds from programs such as the Paycheck Protection Program, and over three years have passed, allowing the company time to recoup losses from Covid-19, it is highly unjust and unconscionable that the remaining money has not been returned.

74. EF Defendants are free to bring third-party complaints and/or requests for indemnification against vendors they paid for services not rendered.

75. Because EF Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and the putative class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the putative class for Defendants' unjust enrichment, as ordered by the Court.

## COUNT IV
## INSURANCE BAD FAITH: 42 PA.C.S. § 8371
### (*Plaintiff v. Specialty*)

76. Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as though the same were fully set forth herein.

77. Plaintiff and the putative class paid a premium for travel insurance to Specialty.

78. The policy delivered by Specialty to Plaintiff and the putative class provided that Specialty would refund consumers in the event of being "quarantined."

79. A shelter-in-place order was in effect for the entirety of the Commonwealth of Pennsylvania during the time of the planned Costa Rica trip.

80. Kirkland was told by EF Defendants that Specialty was not issuing refunds for the cancellation.

81. Because Kirkland understood a claim to EF Tours would be futile, she declined to waste more time and effort going through that process.

82. Because of the systematic bad faith and refusal to cover losses that were insured by the subject policy, Kirkland and the putative class were deprived of the sole benefit of the insurance they paid for.

83. Defendant's denial of said claims were in bad faith.

84. Pursuant to 42 Pa.C.S. § 8371, Defendant's bad faith conduct entitles Plaintiff to a remedy in the amount of the damage incurred, in addition to interest at the prime rate plus three percent (3%), and attorney's fees and court costs.

WHEREFORE Plaintiff Brandy Kirkland, individually and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23 *et seq.*, certifying this action as a class action and appointing Plaintiff as the class representative;

b. Enter an order appointing Kimmel & Silverman PC as counsel for the class;

c. Enter judgment in favor of Plaintiff and the putative class for all damages available under the law;

d. Award Plaintiff and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration; and

e. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, BRANDY KIRKLAND, and all other similarly situated demand a jury trial in this case.

Respectfully submitted,

DATED: January 30, 2024

By: */s/ Craig T. Kimmel*
Craig T. Kimmel, Esq. (PA ID No. 57100)
*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (PA ID No. 311908)
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864
Email: kimmel@creditlaw.com
jginsburg@creditlaw.com
teamkimmel@creditlaw.com